**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**MARK ALAN BARGER, JR.;**                                                          **PLAINTIFFS**
**MARGIE BARGER; and GUARANTY
BANK AND TRUST COMPANY**

**V.**                                                                         **NO. 4:22-CV-90-DMB-JMV**

**STATE FARM FIRE AND
CASUALTY COMPANY**                                                       **DEFENDANT**

**OPINION AND ORDER**

Dissatisfied with how State Farm Fire and Casualty Company decided their insurance claim for damage to their home, Mark and Margie Barger sued State Farm alleging breach of contract, denial of claim without arguable reason, and bad faith. State Farm seeks summary judgment on the breach of contract claim or, alternatively, partial summary judgment on all other claims. Because the Bargers lack admissible evidence to establish the causation element of their breach of contract claim, summary judgment on all claims will be granted.

**I
Procedural History**

On May 13, 2022, Mark Alan Barger, Jr., and Margie Barger[1] filed a complaint in the Circuit Court of Leflore County, Mississippi, against State Farm Fire and Casualty Company, regarding State Farm's determination of their insurance claim for roof damage to their home. Doc. #2. Asserting diversity jurisdiction, State Farm removed the case to the United States District Court for the Northern District of Mississippi on June 16, 2022. Doc. #1. The governing third

---

[1] To avoid confusion, the Court will reference Mark Barger by his first name.

amended complaint[2] filed February 20, 2023, against State Farm and Guaranty Bank and Trust Company contains three counts: "Count I – Contract Damages," "Count II – Denial of Claim without Arguable Reason," and "Count III – Bad Faith." Doc. #98 at 3–5. After State Farm and Guaranty Bank answered the third amended complaint,[3] the Court, on State Farm's motion, realigned Guaranty Bank as a plaintiff.[4] Doc. #121.

On June 22, 2023, State Farm moved to exclude the Bargers' expert testimony in part on grounds that the Bargers failed to designate testifying experts and make full expert disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2). Doc. #135. The Bargers filed a "Motion to Permit Untimely Expert Designation" on June 26, 2023. Doc. #137. On July 18, 2023, United States Magistrate Judge David A. Sanders denied the Bargers' June 26 motion "because the [Bargers'] proposed expert designations [for Mark, Lindy Oswalt, and Bryan Cade] do not meet the requirements of Federal Rule of Civil Procedure 26(a)(2)(C)."[5] Doc. #145 at PageID 1467. In the same order, Judge Sanders granted State Farm's June 22 motion to exclude expert testimony by Mark, a registered engineer; Oswalt, a licensed professional counselor who treated the Bargers; and Cade, owner of Platinum Roofing. *Id*. A week later, State Farm moved for clarification as to whether Judge Sanders' July 18 order would allow Cade to provide lay opinion testimony that

---

[2] The Bargers filed four amended complaints. Docs. #92, #93, #98, #114. The Court struck the fourth amended complaint because "the Bargers neither requested the Court extend the deadline to amend nor did they seek leave to file a fourth amended complaint." Doc. #120 at 2.

[3] Docs. #111, #113.

[4] With leave of the Court, Specialized Loan Servicing, LLC ("SLS"), filed an intervenor complaint on April 18, 2023, requesting "that its interest in the insurance claim and insurance proceeds be reserved and protected." Doc. #125 at PageID 944. The Bargers answered the intervenor complaint on April 27, 2023, and State Farm did so on May 1, 2023. Docs. #127, #128. Based on an agreement among SLS, the Bargers, and State Farm that any judgment or settlement for contract damages against State Farm would be jointly paid to SLS and the Bargers, the Court, on SLS's unopposed motion, dismissed SLS without prejudice. Docs. #215, #216.

[5] As to Mark and Oswalt, Judge Sanders ruled that the Bargers failed to disclose the subject matter of their testimony and a summary of the opinions about which they are expected to testify. Doc. #145 at PageID 1464, 1466. Regarding Cade, Judge Sanders found that the Bargers failed to disclose "a summary of the facts to which [he] is expected to testify other than generally referencing his deposition testimony." *Id.* at PageID 1466.

2

damage to the Bargers' roof was from hail. Doc. #149 at 4. By order issued August 2, 2023, Judge Sanders clarified that Cade "cannot opine that the damage to the [Bargers]' roof was 'caused by the June 10, 2021 storm event' as indicated in the [Bargers]' proposed expert designation." Doc. #151 at PageID 1483.

On July 25, 2023, the parties stipulated that the Bargers "will not present proof or seek contract damages under State Farm Homeowners policy no. 24BHU6347 for any damage alleged in the Third Amended Complaint … other than replacement of the roof in the amount of $16,023.79, and the increased costs of materials use[d] to replace the roof estimated to be a 20-30% increase of $3,120 to $5,000." Doc. #150 at PageID 1479.

State Farm filed a motion for summary judgment on August 4, 2023. Doc. #152. The motion is fully briefed. Docs. #153, #155, #160.

On September 5, 2023, the Bargers filed a motion for leave to file a surreply. Doc. #161. State Farm responded on September 12, 2023, Doc. #162, and the Bargers replied three days later, Doc. #163.

On October 11, 2023, the Bargers moved for reconsideration of Judge Sanders' July 18 order and his August 2 order. Doc. #199. Judge Sanders denied reconsideration on October 26, 2023.[6] Doc. #205.

## II
## Motion to File Surreply

Regarding State Farm's motion for summary judgment, the Bargers contend a surreply is necessary "to correct a clear misrepresentation contained in [State Farm]'s Reply Memorandum" because (1) the reply "states '[f]or the first time in the case, [they] make allegations of post-loss

---

[6] On February 8, 2024, the Court granted State Farm's motion to strike the Bargers' response to its fifteen motions in limine. Doc. #217. The next day, the Court granted State Farm's motions in limine as unopposed. Doc. #219.

3

underwriting'" and "'[a] post-loss underwriting claim was not made in this suit, or if originally made, it has been waived by virtue of the stipulation;'" and (2) they "have not waived any claim that [State Farm] has engaged in post-claims underwriting in this case, and has repeatedly advised the Court of this." Doc. #161 at 1. State Farm responds that the Bargers did not properly plead a separate claim for post-claim underwriting under Federal Rule of Civil Procedure 8(a) and cannot assert a new claim for relief in their response to a summary judgment motion. Doc. #162 at 2. The Bargers reply that post-claim underwriting is "not a separate, stand-alone, cause of action required to be pleaded under [Federal Rule of Civil Procedure 8(a)]" and such evidence is relevant to their claim alleging "State Farm's breach of the duty of good faith and fair dealing, and bad faith breach of contract." Doc. #163 at 2–3.

For the reasons explained below, the Court will not reach the Bargers' bad faith claim in evaluating State Farm's motion for summary judgment. So the Bargers' motion for leave to file a surreply is denied.[7]

### III
### Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The party moving for summary judgment bears the initial burden of 'informing the district court of the basis for its motion.'" *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

A court shall enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[7] "[S]urreplies are heavily disfavored by courts." *Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014).

4

Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (internal quotation marks and citations omitted). The "party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (alterations omitted). When the movant would not bear the burden of persuasion at trial, he may satisfy his initial summary judgment burden "by pointing out that the record contains no support for the non-moving party's claim." *Wease v. Ocwen Loan Servicing, LLC*, 915 F.3d 987, 997 (5th Cir. 2019) (citation omitted). If the moving party satisfies his initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Jones*, 936 F.3d at 321 (alteration and internal quotation marks omitted). "[S]ummary judgment is appropriate unless a plaintiff can produce significant evidence demonstrating the existence of a genuine fact issue." *Johnson v. Diversicare Afton Oaks LLC*, 597 F.3d 673, 676 (5th Cir. 2010) (cleaned up) (emphasis omitted). "A court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the nonmovant." *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020).

## IV
## Factual Background

On August 28, 2020, State Farm issued a homeowners insurance policy ("Policy") to Mark Alan Barger for his home at 198 Riverside Dr., in Greenwood, Mississippi. Doc. #152-1 at PageID 1488–89. With effective dates from August 28, 2020, to August 28, 2021, the Policy provided in pertinent part:

> *We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy.
>
> …
>
> **Windstorm or hail**. This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust. This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

*Id.* at PageID 1489, 1507 (paragraph numbering omitted). The Policy also provided that State Farm will pay "the covered additional amount [Mark] actually and necessarily spend[s] to repair or replace the damaged part of the property" "when the repair or replacement is actually completed." *Id.* at PageID 1513. However, under the Policy, State Farm would not pay for losses resulting from "wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, mechanical breakdown; corrosion, electrolysis, rust; [or] wet or dry rot." *Id.* at Page ID 1510.

Following a rainstorm on June 9-10, 2021, the Bargers reported a claim of leaking in their home to State Farm. Doc. #152-2 at PageID 1533; Doc. #154-1 at PageID 1943. State Farm retained a third-party, Seek Now, to inspect the exterior and roof of the Bargers' home. Doc. #152-2 at PageID 1533. Based on its June 25, 2021, inspection, Seek Now identified wind damage to eight shingles on the right slope of the Bargers' roof. Doc. #152-2 at PageID 1533–34, 1545–46; Doc. #154-1 at PageID 1941. State Farm Claim Specialist Damon Stroud inspected the interior of the Bargers' home on July 14, 2021, and found interior damage from water leaks. Doc. #152-2 at Page ID 1534. Two days later, State Farm sent Mark a letter advising that the actual cash value of the loss did not exceed his $2,911.00 deductible but that for completed repairs he makes, he may be entitled to replacement cost benefits under the Policy if repair costs exceed his deductible. *Id.* at PageID 1534–35, 1610.

6

On July 22, 2021, the Bargers, through their insurance agent, requested a second inspection of the roof by State Farm. Doc. #152-2 at PageID 1535. Two State Farm claims team managers did not think an additional inspection was warranted. Doc. #154-1 at PageID 1939–40. One noted that the Bargers' "roof has numerous facets, valleys, and flat areas" and a roof with this design "will often leak as it ages." *Id.* at PageID 1939. On July 26, 2021, State Farm wrote Mark a letter advising that its original estimate had not changed and that the "roofing displayed evidence of wear, deterioration, and deficiencies in design and/or workmanship during installation," and "[r]otten framing members." Doc. #152-2 at PageID 1618–20.

On September 15, 2021, Mark's counsel sent State Farm (1) a roof replacement estimate of $16,023.79 from Bryan Cade d/b/a Platinum Roofing and a statement from Cade that he observed wind/hail damage to the roof, with photos of the roof attached; (2) an estimate from Johnathan Nobles of 4-J Construction for interior repairs totaling $9,100.00; (3) an itemized list of personal property and estimate for flooring damages; and (4) an aerial photograph of the roof with annotations concerning a snow/ice event from February 2021. Doc. #152-2 at PageID 1621–30, 1632.

On October 6, 2021, External Claim Resource Clifton Amos conducted another inspection of the interior and exterior of the Bargers' home. *Id.* at PageID 1536. Amos identified an additional shingle damaged by wind; roof creasing; additional interior damage from water intrusion; and more evidence of wear, deterioration, rotten framing members, and deficiencies in design and/or workmanship during installation. *Id.* at PageID 1637, 1638. The next day, State Farm paid Mark $9,754.83 based on the additional covered damage. *Id.* at PageID 1644, 1660.

On October 14, 2021, Mark's counsel wrote State Farm that Platinum Roofing estimated a total roof replacement would cost $16,023.79 and asked State Farm to advise if it contends the

7

estimate is unreasonable. *Id.* at 1661–62. There is no evidence in the summary judgment record of State Farm's response.

Over five months later on March 31, 2022, Mark's counsel wrote State Farm advising that the roof repairs were nearly completed and requesting the factual basis for State Farm's denial of the claim for additional payment.[8] *Id.* at PageID 1663–64. By letter dated April 25, 2022, State Farm wrote Mark's counsel explaining its position that a total roof replacement was not warranted given the damage excluded by the Policy. *Id.* at PageID 1680–83.

## V
## Analysis

### A. Breach of Contract Claim

In seeking summary judgment on the breach of contract claim, State Farm argues that the Bargers "cannot meet their burden to show that [it] owes" them additional compensation under the Policy and cannot offer qualified expert testimony on causation. Doc. #152 at 1; Doc. #153 at 10. The Bargers respond that the damage caused by the storm is not excluded under the Policy; because they had to replace the entire roof due to the damage caused by the storm, they are "entitled to replacement costs and benefits;" and State Farm should pay the entire amount of the Cade estimate for their roof replacement. Doc. #155 at 10; Doc. #98 at 4. State Farm replies that the Bargers "fail to offer any admissible evidence to support their claim that the storm event caused damage to their roof not paid for by [it]" and "cannot meet their burden to prove that they have a right to recover additional payments from [it] for storm-related roof damage without expert witness testimony." Doc. #160 at 2.

---

[8] Mark's counsel attached to the letter (1) a memo by Mark stating, among other things, that the total cost spent to repair the roof was $42,432.00, and attaching an interior water intrusion sketch, weather data, and annotated photographs showing alterations to eliminate the flat roof; and (2) an affidavit from the Bargers' contractor Jonathan Nobles. Doc. #152-2 at PageID 1665–76.

8

Under Mississippi law, "[i]nsurance policies are contracts," *S. Healthcare Servs., Inc. v. Lloyd's of London*, 110 So. 3d 735, 744 (Miss. 2013), and "are to be enforced according to their provisions," *Penn-Star Ins. Co. v. Thompson*, 368 So. 3d 1245, 1250 (Miss. 2023) (citation omitted). "A breach-of-contract case has two elements: (1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken, or breached it." *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018). Courts are "bound to enforce contract language as written and give it its plain and ordinary meaning if it is clear and unambiguous." *Miss. Farm Bureau Cas. Ins. Co. v. Britt*, 826 So. 2d 1261, 1266 (Miss. 2002). "[T]he plaintiff bears the burden of proving his right to recover under an insurance policy." *Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 356 (5th Cir. 2007).

There is no dispute that the Policy is valid and binding. Nor do the Bargers dispute that while the Policy covers damage associated with windstorms and hail, it does not cover damages associated with wear, tear, decay, latent defect, or wet or dry rot. Thus, the pivotal issue here is whether the cause of the damage to the Bargers' home is covered under the Policy.

"Testimony regarding the causation of structural damage … exceeds the scope of permissible opinion testimony for lay witnesses because it requires specialized or technical knowledge, experience, or training." *O'Neil v. Allstate Prop. & Cas. Ins. Co.*, No. 5:17-cv-70, 2018 WL 4001978, at *5 (S.D. Miss. June 25, 2018); *see Parker v. State Farm Fire & Cas. Co.*, No. 22-cv-45, 2023 WL 4425599, at *4 (S.D. Miss. May 22, 2023) (issue of whether covered damage resulted from a windstorm "require[s] expert testimony"); *accord Dewey St. Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-cv-12, 2020 WL 7133003, at *4 (S.D. Miss. Dec. 4, 2020) ("Testimony that particular damage to Plaintiff's property was caused by a particular storm is

9

outside the scope of permissible testimony for a lay witness because it requires specialized or technical experience, knowledge, or training.").

In support of its summary judgment motion, State Farm provided competent expert testimony on the issue of causation. Specifically, its expert Joe Shahid opined that (1) the "location of the wind-damaged shingles as provided in the Seek Now" reports, "State Farm … site visit, and Delta Reconstruction and Restoration LLC … reports did not correlate with reported locations of … water intrusion;" (2) "there is no evidence of hail damage to the shingles; and therefore, the reported interior water intrusion was not the result of hail-created openings in the shingle assembly;" and (3) "the underlayment" in areas of the roof "was not properly installed …, creating a latent defect condition … conducive to water intrusion." Doc. #152-6 at PageID 1790–91. According to Shahid, "it is reasonable to conclude that the water intrusion was caused by water flowing through the existing gaps and joints in the shingles due to the latent construction defect." *Id.* at PageID 1791.

In response, the Bargers offer only Mark's lay testimony to support their argument that their roof sustained damage beyond what State Farm covered—specifically, his lay testimony that because he believes the roof was properly installed and did not contain any latent defects, "a reasonable jury can certainly conclude … that it was … the historic rain event of June 10, 2021, which drove the rain through, around, and under [their] roof." Doc. #155 at 11. But as a lay witness, Mark cannot testify about whether the roof was properly installed or if the subject storm caused the damage to the roof because such causation evidence requires specialized or technical knowledge, experience, or training in roof construction. *See Old Canton Rd. Apts., Ltd. v. Topvalco, Inc.*, No. 3:20-cv-797, 2023 WL 3830368, at *6 (S.D. Miss. June 5, 2023) ("[Lay witnesses] are qualified to provide testimony about their personal observations when touring the

10

property, like the existence of water damage. … But on this record, they may not offer lay causation opinions under Rule 701."); *O'Neil*, 2018 WL 4001978, at *5 (whether a lightning strike caused "structural damage … requires specialized or technical knowledge, experience or training"); *see also Parker*, 2023 WL 4425599, at *2, 4 (upholding decision to exclude expert testimony on whether a storm caused structural damage because the witness lacked the necessary "relevant engineering, scientific, technical, or specialized training or experience relating to weather events, construction, or contracting"). And while the Bargers argue that Mark can testify that he did not experience water intrusion in his home until the subject storm, "temporal correlation … is not sufficient to prove causation." *O'Neil v. Allstate Prop. & Cas. Ins. Co.*, No. 5:17-cv-70, 2018 WL 4001979, at *2 (S.D. Miss. Aug. 13, 2018).

Because the Bargers' lack of causation evidence means they fail to meet their burden of proving a covered event caused the additional damage and because the only expert testimony probative of causation links latent construction defects to such damage, State Farm is entitled to summary judgment on the breach of contract claim.[9]

### B. Remaining Claims

The Bargers' remaining claims are "denial of claim without arguable reason" and "bad faith."[10] Doc. #98 at 4, 5. Because the Bargers' breach of contract claim cannot be sustained, their remaining claims also cannot be sustained. *See King v. Freedom Life Ins. Co. of Am.*, No.

---

[9] The Bargers also argue that they "can testify as to their own damages" to show the storm event caused enough damage to warrant an entire roof replacement at the cost of their proffered estimate. Doc. #155 at 10. The Court does not agree. Without proof of causation, the amount of the estimate does not come into play.

[10] "In order to pursue a claim for bad faith denial of coverage in Mississippi, the insured bears a heavy burden to prove that its insurer lacked any arguable or legitimate basis to deny such coverage and that the insurer committed a wilful [sic] or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *Mut. Assur. Inc. v. Banks*, 113 F. Supp. 2d 1020, 1023 (S.D. Miss. 2000) (citation and internal quotation marks omitted). "An arguable basis" for denial "is a reason 'sufficiently supported by credible evidence as to lead a reasonable insurer to deny the claim.'" *Sobley v. S. Nat. Gas Co.*, 302 F.3d 325, 342 n.49 (5th Cir. 2002) (quoting *State Farm Mut. Auto. Ins. Co. v. Grimes*, 722 So. 2d 637, 642 (Miss. 1998)).

2:10-cv-14, 2011 WL 3876979, at *5 (S.D. Miss. Aug. 31, 2011) (granting summary judgment on claims against insurer for breach of contract, bad faith, and breach of the duty of good faith and fair dealing after finding the policy excluded coverage); *Schoonover v. W. Am. Ins. Co.*, 665 F. Supp. 511, 516 (S.D. Miss. June 2, 1987) ("Although styled a tort, an action for bad-faith breach of contract is created by contract and requires proof of a breach of contract.").[11]  Thus, summary judgment is warranted on the Bargers' remaining claims.

## VI
## Conclusion

The Bargers' motion to file a surreply [161] is **DENIED**.  State Farm's motion for summary judgment [152] is **GRANTED**.

**SO ORDERED**, this 15th day of March, 2024.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[11] Even had the Court found State Farm breached the contract, the undisputed evidence in the summary judgment record establishes that State Farm inspected the Bargers' home multiple times, including hiring a third-party company to investigate, before reaching its conclusion that some roof damage was associated with latent defects in the installation process of the roof and that there was evidence of wear, tear, and deterioration—thus providing an arguable basis for its denial.  See *GuideOne Mut. Ins. Co. v. Rock*, No. 1:06-cv-218, 2009 WL 1854452, at *8 (N.D. Miss. June 29, 2009) ("The undisputed evidence in the record establishes that Plaintiffs had arguable reason to deny the Defendants' claim" because "Plaintiffs retained an independent investigator to determine the cause and origin of the loss.").  And extra-contractual damages are available "[w]hen an insurer denies a claim without an arguable basis, but the jury does not award punitive damages." *Fulton v. Miss. Farm Bureau Cas. Ins. Co.*, 105 So. 3d 284, 288 (Miss. 2012).  That is not the case here.